IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARC J. STOUT,
          Plaintiff,

v.                                              Civil Action No. 3:21cv399

FIRST SERGEANT DAN HARRIS,
          Defendant.

## OPINION

This case arises from a roadside scuffle between Marc Stout and First Sergeant Dan Harris of the Spotsylvania County Sheriff's Department. On March 19, 2020, Stout stood on the side of the road outside the Spotsylvania County Sherriff's Department. Harris, passing in a marked patrol car, stopped to speak with Stout. Stout, who seemed to anticipate the altercation that followed, told Harris, "Don't violate my rights and I won't hurt you." Harris asked Stout multiple times to provide his identification, but Stout refused. Eventually, Harris arrested Stout. Other deputy sheriffs brought Stout before a magistrate judge in Spotsylvania County for his initial appearance. After some confusion over what law the officers charged Stout with violating, the magistrate judge issued a warrant against Stout for obstructing justice. Stout, insistent of his innocence, proceeded to trial on the charge; the state court judge presiding over Stout's trial acquitted Stout of the charge.

Stout now sues Harris for violating his Fourth, Fourteenth, and First Amendment rights. A liberal reading of Stout's second amended complaint suggests that he also asserts state law claims for malicious prosecution and false imprisonment. Harris moves to dismiss Stout's complaint. (ECF No. 32.) For the reasons discussed below, the Court will grant in part and deny in part Harris's motion.

## I. FACTS ALLEGED IN SECOND AMENDED COMPLAINT

Acting on the belief that Spotsylvania County deputy sheriffs repeatedly commit civil rights violations, Stout and his brother stood on the public side of a security gate at the Spotsylvania County Sherriff's Department on March 19, 2020. The pair filmed the area.[1] Sergeant Harris and another officer pulled their separate marked cars, with their lights activated, to the side of the road in front of the brothers. Harris and the officer approached the brothers on foot.

Harris told Stout, "This is a road. You're not allowed to walk through it like that, as a pedestrian roadway." (Video, at 0:50–0:59.) Although Stout was not standing in the road, his brother was. Stout said, "I'll tell you what, don't violate my rights and I won't hurt you. How about that?" (Id. at 1:08–1:11.) Harris asked, "Hurt me? Are you threatening me?" (Id. at 1:11–1:12.) Stout responded, "Are you threatening me?" (Id. at 1:13.) Harris explained that he did not threaten Stout, he was merely "advising him." (Id. at 1:37–1:38.) Stout "advised" Harris right back. (Id. at 1:38–1:45.)

---

[1] In his second amended complaint, Stout refers to a video of the interaction that he uploaded to YouTube. (See ECF No. 29, at 12); *Arrested, Found Not-Guilty, Lawsuit Link Below; One Charge Dismissed, One Charge Pending Against Bro*, YouTube (Sept. 21, 2020), https://www.youtube.com/watch?v=3dGMchaL9hM (hereinafter, "Video"). Stout also refers to this video in his response to Harris's motion to dismiss. (ECF No. 35, at 1.)
Although judicial inquiry during a motion to dismiss is "generally limited to . . . the complaint itself," the Court may "also consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). This rule also applies to videos. *See, e.g., Thompson v. Badgujar*, No. 20cv1272, 2021 WL 3472130, at *3–4 (D. Md. Aug. 6, 2021). Because Stout offers the video as part of his pleading and its authenticity is not in question, the Court considers the video in conjunction with Harris's motion to dismiss. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that, when deciding a motion to dismiss, courts may consider documents attached to a complaint "so long as they are integral to the complaint and authentic"). In addition, any dispute "between the allegations of the complaint and what is plain from the video are resolved in favor of the video." *Thompson*, 2021 WL 3472130, at *3.

Harris then asked Stout for his identification. Stout responded, "You're not detaining me. You don't have reasonable suspicion." (*Id.* at 1:50–1:52.) Harris explained, "I do at this point because you said you were going to hurt me." (*Id.* at 1:52–1:54.) Stout continued to refuse to provide Harris with identification and said, "Don't threaten me, and I won't threaten you back. How about that?" (*Id.* at 3:20–3:22.) Harris continued to ask Stout for identification. Stout continued to refuse, explaining that he "chase[s] these kinds of encounters." (*Id.* at 4:38–4:40.) Harris's requests for identification became demands: "You need to provide me with ID." (*Id.* at 5:18–5:20.)

After additional refusals to hand over his identification or provide his social security number, Harris placed Stout in handcuffs and arrested him. According to Stout, Harris arrested him for "failing to identify." (ECF No. 29, at 8.) By this time, at least three other officers joined Harris at the scene. The officers also arrested Stout's brother "for being a pedestrian in the roadway." (*Id.*)

Several deputies, but not Harris, took Stout and his brother to the magistrate judge. The magistrate judge refused to charge Stout's brother with being a pedestrian in the roadway. The deputies next asked the magistrate judge to charge Stout's brother with impeding traffic; the magistrate judge refused that charge too. Finally, the sergeant who arrested Stout's brother came into the magistrate judge's office and said, "We have to charge with him something, anything." (*Id.* at 9.) Eventually, the magistrate judge charged Stout's brother with assault on law enforcement because the deputies reported that Stout's brother coughed at some point during the arrest, "constituting assault . . . because of 'coronavirus and everything.'" (*Id.*)

The deputies next sought to have the magistrate judge charge Stout. First, Deputy Barto asked the magistrate judge to charge Stout with failing to identify. The magistrate judge refused

3

that charge because Barto could not "find any corresponding statute for 'failing to identify.'" (*Id.*) Barto next tried "false identification," but the magistrate refused that charge for lack of supporting facts. (*Id.*) Finally, Harris came to the magistrate judge's office and told Barto to "put it under obstruction." (*Id.*) The magistrate judge then charged Stout and his brother with obstruction of justice. Stout "was [then] jailed for hours and . . . released on bond." (*Id.* at 10.)

At Stout's trial, "the prosecutor stepped down from prosecuting" his case and "forced" Harris to proceed against Stout "on his own." (*Id.*) Without explanation, Harris did not appear for two trial dates. (*Id.*)

In preparation for trial, Stout's attorney requested a copy of the camera footage that Stout had captured during the March 19 interaction; the police had taken Stout's camera footage as evidence. Harris told Stout's attorney that he would *not* provide the footage from Stout's camera and that no deputies had any body-camera footage to offer. (*Id.* at 10–11.)

On the morning of Stout's third trial date, Barto offered her body-camera footage to Stout's attorney. (*Id.* at 11.) At trial, Harris offered false testimony and represented that "Barto would corroborate his version of events." (*Id.*) Barto interjected and said that "she would not affirm [Harris's] statements"; Barto "provided her own version of events." (*Id.*) Stout's attorney offered Barto's body-camera footage as evidence and argued that Stout's statements to Harris "were protected free speech" and Stout's "right to refuse to identify" clearly established. (*Id.*) The judge then "quickly" found Stout not guilty, ruling that Stout's "'threat' was protected by the First Amendment" and "failing to identify is not a crime in Virginia." (*Id.* at 12.)

Following trial, Harris refused to release Stout's camera, but a supervising lieutenant commanded Harris to release it.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the plaintiff appears pro se, as Stout does here, courts do not expect him to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle, however, has limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

Harris moves to dismiss the complaint pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. A 12(b)(6) motion gauges a complaint's sufficiency without resolving any questions about the facts or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering the motion, the court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that the court must accept all allegations as true, however, does not apply to conclusory statements and legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A 12(b)(1) motion challenges the court's jurisdiction over the complaint's subject matter. A defendant who moves for dismissal for lack of subject matter jurisdiction may attack the

complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *White v. CMA Constr. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). When considering a 12(b)(1) motion, the court affords the allegations in the plaintiff's complaint the same procedural protection as it does when it considers a 12(b)(6) motion. *Id.* Defendants can also challenge a plaintiff's standing under Rule 12(b)(1). *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003). The plaintiff has the burden of proving the existence of subject matter jurisdiction and standing. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The method by which courts review a 12(b)(1) motion depends on what the moving party asserts. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the moving party argues that the complaint fails to allege facts upon which subject matter jurisdiction exists, then the court accepts the facts alleged as true as it would for a 12(b)(6) motion. *Id.* If, instead, the moving party contends that the facts alleged to establish jurisdiction are not true, then the court does not owe the plaintiff the same presumption of truth and may hold an evidentiary hearing to determine if jurisdiction exists. *Id.* But "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute"—as is the case here—then "the entire factual dispute is appropriately resolved only by a proceeding on the merits." *Id.*

### III. DISCUSSION

The Court construes Stout's second amended complaint as bringing six claims against Harris. First, he claims Harris violated his Fourth Amendment rights when he falsely arrested and maliciously prosecuted Stout without probable cause. Next, Stout says that this same conduct violated his Fourteenth Amendment due process rights. Stout also contends that Harris violated

the First Amendment by arresting him in retaliation for protected speech. Finally, Stout brings false imprisonment and malicious prosecution claims under Virginia law.

### A. *Fourth Amendment*[2]

Stout accuses Harris of violating his Fourth Amendment rights by detaining, arresting, and prosecuting him without probable cause. "These claims are analogous to two common-law causes of action—false arrest and malicious prosecution." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–82 (4th Cir. 1996); *see also Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("The purpose of incorporating common law principles into § 1983 is not to create new causes of action" but to recognize "the fact that § 1983 was designed to create a 'special species of tort liability.'" (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976))). "[A]llegations that a warrantless arrest or imprisonment was not supported by probable cause advance a claim of false arrest or imprisonment" while "allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to . . . malicious prosecution." *Brooks*, 85 F.3d at 181–82.

#### 1. *False Arrest*

"[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Because Stout does not allege any faults with the warrant issued by the magistrate judge in this case, he fails to state a constitutional claim for false arrest. The Court, therefore, will grant the motion to

---

[2] When state officials violate the constitutional rights of Americans, the victims pursue justice under 42 U.S.C. § 1983. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) ("Section 1983 . . . creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." (quoting 42 U.S.C. § 1983)).

7

dismiss Stout's claim for false arrest in violation of the Fourth Amendment. Should Stout have facts that challenge the validity of the warrant issued by the magistrate judge, however, Stout may seek leave to file an amended complaint.

### 2. *Malicious Prosecution*

To state a claim for malicious prosecution, a plaintiff "must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

#### a. Causation

Normally, the issuance of a warrant by a magistrate judge would break the causal chain between an arrest and an unlawful seizure. *See King v. Darden*, No. 3:17cv742, 2018 WL 3651590, at *4 (E.D. Va. Aug. 1, 2018). But the chain does not break if law enforcement officers "lie to, mislead, or unduly pressure a magistrate" to procure the warrant. *Id.* Here, Stout alleges that the arresting officers offered multiple charges to the magistrate that the latter refused to charge. The magistrate only issued charges after Harris ordered the deputies to charge Stout with obstruction of justice. Stout also alleges that Harris "lied about everything" during his criminal trial. (ECF No. 29, at 11.) Assuming the truth of the facts alleged in the second amended complaint, Stout sufficiently alleges that Harris caused his unlawful seizure and the magistrate's warrant does not break this causal chain.

#### b. Probable Cause

The "totality of the circumstances known to the officers at the time of the arrest" determine whether probable cause existed at the time of the seizure. *United States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). Where these circumstances "would warrant the belief of a prudent person that

8

the arrestee had committed . . . an offense," probable cause exists. *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (quoting *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988)). Thus, the Court must determine whether a reasonable person, with all the knowledge Harris had at the time of arrest, would believe Stout had committed an offense at the time of his arrest.

Drawing all inferences in Stout's favor, Harris arrested Stout for failing to identify and succeeded in having the magistrate charge him with obstruction of justice.[3] But failing to identify does not violate Virginia law, nor does it violate the obstruction statute, Va. Code Ann. § 18.2-460(A).[4] *See* Crimes and Offenses Generally: Crimes Against the Administration of Justice, Op. Va. Atty's Gen. 02-082 (Oct. 10, 2002). "[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult." *Ruckman v. Commonwealth*, 28 Va. App. 428, 429, 505 S.E.2d 388, 389 (1998). Thus, Stout sufficiently alleges that Harris arrested him without probable cause that he had violated any law.

---

[3] Section 18.2-460(A) of the Virginia obstruction statute criminalizes knowingly obstructing "any law enforcement officer . . . in the performance of his duties . . . or fail[ing] or refus[ing] without just cause to cease such obstruction when requested." Section 18.2-460(B) forbids knowing attempts by threat or force "to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties."

Harris's brief spends a great deal of time discussing § 18.2-460(B) and Stout's alleged threat to Harris. (ECF No. 33.) But the arrest warrant states in the description "NO THRT/FORCE." (ECF No. 33-1, at 1.) Thus, drawing all inferences in favor of Stout as the Court must at this stage, the Court accepts his allegation that he was arrested for failing to identify, not for making a threat.

[4] *See, e.g., Cary v. Commonwealth*, No. 2068-14-1, 2015 WL 6143660, at *3 n.1 (Va. Ct. App. Oct. 20, 2015) (explaining that a defendant's failure to identify "is not . . . 'punishable under'" § 18.2-460).

*c. Criminal Proceedings Terminated in Stout's Favor*

Finally, because the state court judge found Stout not guilty of obstruction of justice, Stout satisfies the third element of his malicious prosecution claim.

*   *   *

Because Stout satisfies all three elements, the Court will not dismiss his claim that Harris's malicious prosecution violated the Fourth Amendment.

### B. Fourteenth Amendment

Stout also alleges that Harris deprived him of liberty without due process in violation of the Fourteenth Amendment. Stout's due process claim falters because "the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Instead, the Fourth Amendment defines due process "for seizures . . . in criminal cases, including the detention of suspects pending trial." *Taylor*, 81 F.3d at 435–36 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)). Because relief for the conduct Stout alleges properly lies under the Fourth Amendment, the Court will dismiss Stout's claim alleging a due process violation for the same conduct.[5]

### C. First Amendment

Stout also alleges that Harris violated the First Amendment by detaining him for exercising his right to free speech.[6] "A cognizable First Amendment retaliation claim requires a plaintiff to

---

[5] To the extent Stout bases his due process claim on Harris's misconduct during trial, the claim still fails because Stout does not allege that he did not receive a fair trial. Indeed, his trial served exactly the fact-finding purpose it was intended to, and he was not convicted. *See Safar*, 859 F.3d at 245 (quoting *Taylor*, 81 F.3d at 436 n.5) ("[A] police officer who withholds exculpatory information does not violate the [Due Process Clause] unless the officer's failure to disclose deprived the plaintiff of the 'right to a fair trial.'").

[6] Stout makes two, inconsistent claims: that Harris detained him for exercising his right to freedom of speech and arrested him for failure to identify. Fed. R. Civ. Proc. 8(d)(2) allows

10

show: (1) 'that [plaintiff's] speech was protected'; (2) 'defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech'; and (3) 'a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action.'" *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000)).

Not all speech is protected by the First Amendment. States may ban speech constituting a "true threat." *Virginia v. Black*, 538 U.S. 343, 359 (2003). A true threat is one that "an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret . . . as a serious expression of an intent to do harm." *United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016).

Virginia Code Annotated § 18.2-460(B) states that "any person who, by threats or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties" is guilty of a misdemeanor. To avoid criminalizing protected speech, § 18.2-460 forbids only true threats. *Wise v. Commonwealth*, 49 Va. App. 344, 355, 641 S.E.2d 134, 140 (2007) (speaking specifically about § 18.2-460(C), which covers threats related to felonies).

Assuming the truth of the facts in the second amended complaint, Stout's allegations satisfy all three elements of a First Amendment retaliation claim. First, Stout alleges and the Court finds plausible that Stout's statement—"Don't violate my rights, and I don't hurt you"—amid the context surrounding it, does not constitute a true threat and, therefore, remains protected speech.[7]

---

plaintiffs to plead alternative theories of liability. Thus, Stout may proceed with these inconsistent claims.

[7] The Court reaches this conclusion after considering what speech *does* amount to a true threat. *See, e.g., Wise*, 49 Va. App. at 348, 641 S.E.2d at 136 (affirming the trial court's finding that the defendant made "true threats" when he, while being arrested, told the arresting officer that he would use a phone call to "have you dusted," that "dusted" meant "killed," that he knew where

11

Second, Harris's arrest of Stout adversely affected Stout's speech; Stout could not express himself as well from jail. And finally, Harris, himself, claims to have arrested Stout for his speech. (ECF No. 36, at 3 "Stout was not arrested for failing to identify himself, but for his threat of physical harm to First. Sgt. Harris."). Consequently, Stout's First Amendment claim will survive Harris's motion to dismiss.

### D. *State Law Claims*

The Court generously construes Stout's second amended complaint to also allege claims under Virginia law for false imprisonment and malicious prosecution. The Court analyzes both similarly to how it analyzed the preceding § 1983 claims, and the results are identical. Stout fails to state a claim for false imprisonment but successfully pleads malicious prosecution.

#### 1. *False Imprisonment*

False imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 255 Va. 492, 497, 500 S.E.2d 215, 218 (1998) (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921, 131 S.E. 860, 865 (1928)). "[A] warrant that is regular on its face-even one procured without probable cause-does not create a cause of action for false imprisonment." *Montanile v. Botticelli*, No. 1:8cv716, 2008 WL 5101775, at *4 (E.D. Va. Nov. 25, 2008). Because Stout does not allege any defect with the arrest warrant, the Court will dismiss this claim. Should Stout have facts that challenge the validity of the warrant issued by the magistrate judge, however, Stout may seek leave to file an amended complaint.

---

the officer lived, and that "[t]he first thing . . . [he was] going to do when [he got] out [was] to find [the officer]." He later said he would "stab that fucking cop").

### 2. *Malicious Prosecution*

"In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 281 Va. 715, 722, 708 S.E.2d 884, 889 (2011). Malice is "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998).

Stout sufficiently pleads all four elements of this claim. First, by alleging that Harris arrested Stout without probable cause, concealed evidence, and perjured himself during Stout's trial, Stout adequately pleads malice. Next, Stout satisfies the second element by alleging that Harris "affirmatively, actively, and voluntarily took steps to instigate" Stout's arrest. *Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 512 (E.D. Va. 2010), *aff'd* 492 F. App'x 315 (4th Cir. 2012). Third, for the same reasons detailed in Section III(A)(2)(b), Stout adequately alleges that Harris lacked probable cause to pursue charges against Stout. And finally, Stout alleges, and Harris does not contest, that the state criminal proceedings terminated in Stout's favor. For these reasons, the Court will deny Harris's motion to dismiss Stout's claim for malicious prosecution under Virginia law.

### *E. Qualified Immunity*

Harris argues that qualified immunity shields him from all of Stout's claims. To overcome a defense of qualified immunity at the motion to dismiss stage, the plaintiff must "plead . . . facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731,

735 (2011). But "[t]he burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013).

As discussed in Sections III(A) and (C), Stout adequately alleges that Harris violated his Fourth and First Amendment rights. The Court, therefore, focuses its inquiry on whether, at the time of the allegations, the law protecting these rights was sufficiently clear such that a reasonable officer would understand "that his conduct was unlawful in the situation he confronted." *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (en banc).[8]

*1. Fourth Amendment*

The right to be free from an arrest without probable cause is clearly established. *Dunaway v. New York*, 442 U.S. 200, 213 (1979) (explaining that generally, "Fourth Amendment seizures are 'reasonable' only if based on probable cause"). The law in this jurisdiction is equally clear on the high standard for obstruction under § 18.2-460. *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003).

> Virginia courts had consistently interpreted the Commonwealth's Obstruction Statute to place beyond the Statute's reach conduct that was merely harassing or irritating to an arresting officer. *See, e.g., Ruckman*, [28 Va. App. at 429,] 505 S.E.2d at 389 (citing *Jones* [*v. Commonwealth*, 141 Va. 471, 478–79, 126 S.E. 74, 77 (1925)] in holding that individual must actually "impede or prevent the officer from performing [his] task," and not "merely render[] the officer's task more difficult," in order to be criminally liable under Obstruction Statute).

---

[8] To determine if a right was clearly established, the Court should look to "'the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)).

14

*Wilson*, 337 F.3d at 403.[9] Thus, assuming the truth of Stout's allegations, the Fourth Amendment rights Stout asserts were "clearly established" at the time of the alleged conduct.

### 2. *First Amendment*

The right to be free from retaliatory arrest for protected speech is also clearly established in this jurisdiction. "[T]he Fourth Circuit's 2013 decision in *Tobey* recognized that 'effect[ing]' someone's arrest in retaliation for their exercise of First Amendment rights without probable cause to effect that arrest established a viable First Amendment retaliation claim." *Snoeyenbos v. Curtis*, 439 F. Supp. 3d 719, 735 (E.D. Va. 2020) (quoting *Tobey*, 706 F.3d at 387–92). Because *Tobey* put law enforcement officers in this jurisdiction on notice, the First Amendment right Stout asserts was "clearly established" at the time of the alleged conduct.

\*       \*       \*

Qualified immunity, therefore, does not protect Harris from Stout's Fourth and First Amendment claims. *Cf. Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D. Va. 2013) ("[Q]ualified immunity is peculiarly well–suited for resolution at the summary judgment stage.").

### IV. CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part Harris's motion to dismiss. The Court will grant the motion to dismiss Stout's Fourteenth Amendment claim and his claim of false arrest under the Fourth Amendment and Virginia law. The Court will deny the

---

[9] In addition, a Virginia Attorney General's Opinion published in 2002 makes explicit that failure to identify does not fall within the obstruction of justice statute. Crimes and Offenses Generally: Crimes Against the Administration of Justice, Op. Va. Atty's Gen. 02-082 (Oct. 10, 2002) ("[A] law-enforcement officer conducting a lawful investigative stop may not arrest a suspect for obstruction of justice under § 18.2-460(A), when the suspect refuses to identify himself to the officer.").

motion to dismiss as to Stout's claims of malicious prosecution under the Fourth Amendment and Virginia law, and of retaliation under the First Amendment.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __3 December 2021__
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

Digitally signed by John Gibney
Date: 2021.12.03
13:20:32 -05'00'